**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GREAT AMERICAN INSURANCE COMPANY,

      Plaintiff/Counterclaim Defendant,

v.                                       Civil Action No. 3:14CV295

GRM MANAGEMENT, LLC, and
SN HOLDINGS, LLC,

      Defendants/Counterclaim Plaintiffs.

## MEMORANDUM OPINION

Before the Court are Defendants/Counterclaim Plaintiffs GRM Management, LLC

("GRM") and SN Holdings, LLC's ("SN") (collectively, "Defendants") Motion to Dismiss the

Complaint and Plaintiff/Counterclaim Defendant Great American Insurance Company's ("Great

American") Motion to Dismiss the Counterclaim, Motion to Bifurcate, and Motion for Judgment

on the Pleadings. (ECF Nos. 11, 20, 23, 25.) The Court heard oral argument and these matters

are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[1]

For the reasons that follow, the Court will:

(1)     Deny GRM and SN's Motion to Dismiss the Complaint (ECF No. 11);

(2)     Grant in part and deny in part Great American's Motion for Judgment on the
          Pleadings and, to the extent applicable, its Motion to Dismiss (ECF Nos. 20, 25);
          and,

(3)     Grant Great American's Motion to Bifurcate (ECF No. 23).

---

[1] The parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C.
§ 1332.

# I. Standards of Review

## A. Motion to Dismiss For Failure to State Claim for Relief: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege[ ] facts sufficient to state all the elements of [his or] her claim[ ]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (*citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Great American and Defendants attached the insurance contract to the Complaint and Counterclaim. (*See* Compl. Ex. 1; Countercl. Ex. A.) Additionally, Great American attached sixteen (16) letters[2] to its Answer to Defendants' Counterclaim. The Court will consider the

---

[2] These sixteen letters include Great American's requests for documents, reservations of rights, and attempts to schedule the examination under oath of the manager of the hotel named in the insurance policy. (*See generally* Answer to Countercl. Exs. 1–16.)

The Court is perplexed that many of those letters appear to be signed by Great American's counsel at bar, and that they may suggest involvement by current counsel in

insurance contract and sixteen letters because the documents are central to the claims, sufficiently referred to in the Complaint and Counterclaim, and neither party contests their authenticity. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

### B. Motion for Judgment on the Pleadings: Rule 12(c)

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but "within such time as not to delay the trial." *See* Fed. R. Civ. P. 12(c). Courts apply the same standard that is applied to Rule 12(b)(6) motions to Rule 12(c) motions for judgment on the pleadings. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999) (applying Rule 12(b)(6) standard of review to a Rule 12(c) motion); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (stating that in a Rule 12(c) motion, all facts asserted in the complaint must be taken as true and all reasonable factual inferences must be drawn in favor of the nonmoving party). When reviewing a Rule 12(c) motion, however, a court may consider all pleadings, including answers and attached exhibits, instead of reviewing only the complaint. *See Seneca Ins. Co. v. Shipping Boxes I, LLC*, --- F. Supp. 2d ---, No. 2:13cv651, 2014 WL 2567158, at *3 (E.D. Va. June 6, 2014); *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Rule 12(c) allows a court to take the answer's factual allegations as true to the extent the allegations have not been denied or do not conflict with the factual allegations in the complaint. *Id.* Under Rule 12(c), a court may consider documents incorporated by reference without converting the motion to summary judgment if the documents are central to the claim and not in dispute. *Mendenhall*, 856 F. Supp. 2d at 724. A court shall grant a motion for judgment on the pleadings under Rule

---

investigating the claim before the Court. The Court seeks assurance that Va. R. Prof'l Conduct 3.7 – requiring a lawyer not act as an advocate where he or she is likely to be a necessary witness – will not be implicated in this litigation.

12(c) where "it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Shooting Point, L.L.C. v. W.M. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002).

### C. Motion to Bifurcate: Rule 42(b)

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision whether to bifurcate "is within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953).

## II. Procedural and Factual Background

### A. Procedural History

On April 24, 2014, Great American filed its Complaint for Declaratory Judgment. On July 15, 2014, GRM and SN filed their Answer, Counterclaim, and Motion to Dismiss. (ECF Nos. 10–11.) On August 12, 2014, Great American filed its Motion to Dismiss the Counterclaim, Motion to Bifurcate, and Motion for Judgment on the Pleadings. (ECF Nos. 20, 23, 25.) On October 27, 2014, the Court heard oral argument on the four pending motions.[3]

---

[3] During oral argument, the Court ordered the parties to submit supplemental briefing regarding the relevancy, if any, of *Stoney Glen, LLC, v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460 (E.D. Va. 2013) to Defendants' claim for breach of the implied covenant of good faith and fair dealing. Both parties submitted their supplemental briefs as directed and the Court has considered their submissions. (ECF Nos. 44–45.)

**B.** <u>Summary of Allegations in Great American's Complaint</u>[4]

    **1.**    <u>The Policy at Issue</u>

Great American's declaratory judgment action concerns a business insurance policy ("the Policy") issued by Great American to GRM and SN. The Policy provides insurance for a hotel property, The Richmond Magnuson Grand Hotel and Convention Center, owned by SN and operated by GRM in Henrico, Virginia. Anil "Neal" Patel is GRM's principal member and manager.

    **2.**    **Great American's Allegations Regarding GRM and SN's Loss and Claim**

On September 13, 2013, within the applicable Policy period, GRM notified Great American of a reported loss involving theft of the hotel's rooftop heating, ventilation, and air conditioning ("HVAC") units and certain items of GRM's business personal property ("the Loss"). GRM requested coverage under the Policy in connection with the Loss ("the Claim").

    **3.**    **Great American's Allegations Regarding its Investigation of the Loss and Claim**

Great American began investigating the Loss. On September 18, 2013, Patel informed Great American's field adjuster David Lowery that Patel believed Donald Moore was responsible for the Loss. Moore is a former member of the hotel's staff. By letter dated September 30, 2013, Great American reserved its rights in connection with the Claim, based, in part, on the Policy's exclusion for losses resulting from dishonest or criminal acts perpetrated by GRM employees and/or persons to whom GRM entrusted property. As part of the investigation, Great American investigator Michael Bohlen interviewed Moore. Moore admitted to stealing

---

[4] For purposes of GRM and SN's motion to dismiss to Complaint, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Great American. *Matkari*, 7 F.3d at 1134.

certain items from the hotel, including some HVAC components. Bohlen also interviewed Patel. Patel reiterated his belief that Moore took the HVAC components and other items from the hotel. Bohlen asked Patel to provide Great American with documents and information relating to the Loss.

On October 8, 2013, March 7, 2014, and April 3, 2014, Great American sent Patel additional reservation of rights letters.[5] By letter dated October 7, 2013, Great American directed Patel to appear on October 31, 2013 for an Examination Under Oath ("EUO") in connection with the Claim. Great American further instructed Patel to produce documents when he appeared for the EUO. On November 20, 2013, after rescheduling twice, Patel appeared for the EUO. He did not produce the requested documents.

During his November 20, 2013 EUO, Patel testified that GRM did not begin to notice missing business personal property until August–September 2013. Patel stated that he suspected Moore took the business personal property. Patel described Moore as a subcontractor whom GRM hired near the end of July 2013 to help maintain the hotel's HVAC units, packaged terminal air conditioning ("PTAC")[6] units, ice machines, and other equipment. Patel claimed that GRM lost business due to the HVAC units' inoperability and the reported inoperability of PTAC units in some guest rooms. According to Patel's testimony, GRM and SN's Claim encompassed four categories of Loss: (1) damage to HVAC units; (2) damage to PTAC units; (3) missing items of business personal property; and, (4) lost business income. Patel indicated GRM had documentation for each of the Loss categories and that he had mailed the

---

[5] Great American sent a fifth reservation of rights letter on April 24, 2104, the same day Great American filed its Complaint. (Answer to Countercl. ¶ 24, Ex. 16.)

[6] PTAC units are self-contained heating and air conditioning unit systems commonly found in hotels.

documentation previously or would provide it to Great American's counsel. Patel described the business losses as substantial. On December 13, 2013, Patel produced some responsive documents.

By letter dated December 23, 2013, Great American advised Patel that he would need to appear for a continuation of his EUO. Great American scheduled the second EUO for January 10, 2014. Great American also instructed Patel and GRM to produce at least seven categories of outstanding documents by January 3, 2014. Patel and GRM failed to do so. On January 24, 2014, after rescheduling twice, Patel appeared for his second EUO.

During his second EUO, Patel indicated that mold had developed on the walls and other areas of the hotel due to the prolonged inoperability of the HVAC units. Patel also testified that the property suffered from a roach infestation as a result of the HVAC units' inoperability. Patel produced a spreadsheet listing the various categories of Loss and the reportedly stolen business personal property. GRM claimed the following Losses: (1) missing business personal property: $1,023,115; (2) repairs to property, including HVAC and PTAC units: $2,683,325; (3) business income lost since mid–September 2013: $1,369,500; and, (4) future business income lost from November 2013 to present: $63,751,750. Although GRM produced some documents on December 13, 2013, Great American contends GRM has failed to provide documentation to support the bulk of the reported Losses. Great American asked GRM to provide additional documentation. GRM has failed to do so.

On February 4, 2014, Moore pled guilty to grand larceny in the Circuit Court for the County of Henrico. Moore admitted to stealing various items from the hotel from July 25, 2013 through September 19, 2013, including HVAC components.

In its Complaint, Great American seeks a declaration[7] that it is not obligated to pay the Claim by operation of one or more of the Policy's exclusions or limitations. Great American enumerates six exclusions and three limitations as a basis for declaratory judgment.

## C.   Summary of Allegations in GRM and SN's Counterclaim[8]

### 1.   The Policy at Issue

GRM and SN's Counterclaim implicates the same hotel, and the same business insurance policy issued by Great American, at issue in Great American's Complaint.

### 2.   GRM and SN's Allegations Regarding its Loss and Claim

In September 2013, GRM and SN learned about "acts of destruction" concerning the hotel property covered by the Policy. (Countercl. ¶ 20, ECF No. 10.) The destruction included: (1) damage to components of the HVAC system, including damage to roof top units ("RTU") and (2) damage to the PTAC units. The damage to the HVAC and PTAC units "resulted in additional loss and damage to the hotel and loss of business," including interruption of business. (*Id.* ¶ 21.) GRM and SN made a claim for payment under the Policy ("the Claim"). GRM and SN "gave timely notice" of the Claim to Great American. (*Id.* ¶ 30.) Great American "refused and denied" the Claim. (*Id.* ¶ 24.)

---

[7] The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such a declaration."

[8] For purposes of Great American's motion to dismiss the Counterclaim, the Court will assume the well-pleaded factual allegations in the Counterclaim to be true and will view them in the light most favorable to GRM and SN. *Matkari*, 7 F.3d at 1134. For purposes of Great American's motion for judgment on the pleadings with respect to Count I, the Court will view the allegations and all reasonable inferences drawn therefrom in favor of GRM and SN. *Edwards*, 178 F.3d at 244.

### 3.    GRM and SN's Allegations Regarding Great American's Breaches

GRM and SN allege three breaches: (1) breach of contract; (2) anticipatory breach of contract; and, (3) breach of the covenant of good faith and fair dealing. Specifically, GRM and SN allege Great American breached its obligation to "adjust" the Claim by, among other actions: (1) filing suit before the Loss could be measured and submitted; (2) refusing to pay for damage to the property and insisting upon the production of documents in an effort to overwhelm GRM and SN; (3) acting on an assumption that the Loss resulted from employee theft, rather than investigating whether the Loss resulted from theft by an independent contractor; (4) refusing to pay the Claim; (5) refusing to act on the Claim and the partial proof of loss submitted; and, (6) refusing to respond to the Claim in good faith. (*Id.* ¶ 29.)

According to GRM and SN, "Great American has undertaken a course of action which has delayed and frustrated [GRM and SN], and which . . . is intended to cause [them] additional damage, . . . in an effort to delay payment on this Claim." (*Id.* ¶ 32.) Despite GRM and SN's compliance "with all contractual terms of the Policy," "Great American has failed and refused to properly adjust and pay on this Claim . . . ." (*Id.* ¶¶ 34–35.)

GRM and SN assert Great American "is in breach of contract and/or in anticipatory breach of contract" due, in part, to its refusal to: "[1] adjust the Claim in a timely and good faith manner, . . . [2] accept coverage under the Policy[,] and . . . [3] pay the [L]oss in accordance with the [P]olicy terms." (*Id.* ¶ 37.) GRM and SN also contend Great American breached "its contractual covenant to act in good faith and deal fairly with [GRM and SN]." (*Id.* ¶ 38.) Finally, GRM and SN seek a declaration that Great American is in breach of contract and owes

costs and attorneys' fees pursuant to Section 38.2-209 of the Code of Virginia ("Section 38.2-209(A)").[9]

## III. Analysis

### A.  Great American's Complaint

At base, GRM and SN argue that filing a Counterclaim that contains a breach of contract cause of action renders Great American's Complaint for declaratory judgment moot because the breach of contract action can resolve the dispute.[10]  (Defs.' Mem. Supp. Mot. Dismiss 2, 8, ECF No. 12.)  This argument founders for the same reason it did before the *Seneca Insurance Company* court under indistinguishable procedural circumstances: "the two claims are brought by opposing parties" in separate pleadings. *See Seneca Ins. Co.*, 2014 WL 2567158, at *6.[11]  In contrast, dismissal may be appropriate when the same party brings a breach of contract claim and

---

[9] Section 38.2-209(A) of the Code of Virginia states in pertinent part:

> [I]n any civil case in which an insured individual sues his [or her] insurer to determine what coverage, if any, exists under his [or her] present policy . . . or the extent to which his [or her] insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award.  However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy. . . .

Va. Code Ann. § 38.2-209(A) (West 2014).

[10] GRM and SN did not otherwise challenge the sufficiency of the allegations in the Complaint.  The Court will discuss the propriety of a declaratory judgment action in the Counterclaim separately.

[11] In *Seneca Insurance Company*, a case nearly on all fours with the case at bar, an insurer filed a declaratory judgment action against its first party insured seeking a declaration it owed no coverage under the insurance policy. *Seneca Ins. Co.*, 2014 WL 2567158, at *1.  The insured counterclaimed for breach of contract. *Id.* at *2.  The insured's breach of contract claim arose out of the insurer's failure or refusal to pay without expressly denying coverage. *Id.* at *2–4.  The *Seneca Insurance Company* court denied the insured's motion to dismiss the Complaint. *Id.* at *5–6.

a declaratory judgment claim because courts have "'repeatedly recognized that a declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim.'" *Id.* at *5–6 (quoting *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12cv49, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014)). As explained in *Seneca Insurance Company*, however, separate pleadings present different considerations: "Were the Court to grant [Defendants'] Motion to Dismiss, [Defendants] could later voluntarily dismiss [their] counterclaims and [Plaintiff] would be without a remedy." *Id.* Further, "declaratory judgment actions . . . to determine coverage [are] common." *Id.* As in *Seneca Insurance Company*, "the instant action does not involve inappropriate procedural fencing but rather asks the Court for a construction of definite stated rights, status, and other relations as delineated in the insurance contract." *Id.* (citation omitted) (internal quotation marks omitted). Accordingly, the Court will DENY GRM and SN's Motion to Dismiss the Complaint.

## B.  GRM and SN's Counterclaim

### 1.  Count I:  Breach of Contract, Anticipatory Breach of Contract, and Breach of the Covenant of Good Faith and Fair Dealing

The Court will grant in part and deny in part Great American's motion under Rule 12(c) and Great American's motion under Rule 12(b)(6) (to the extent it applies) regarding Count I's three claims.[12] GRM and SN base each of Count I's three claims on Great American's alleged

---

[12] Count I of the Counterclaim contains three parts:  (1) breach of contract; (2) anticipatory breach of contract; and (3) breach of the covenant of good faith and fair dealing. While Great American confirmed in oral argument that it seeks Rule 12(c) relief as to Count I, Great American moved for Rule 12(b)(6) and Rule 12(c) relief regarding Count I in briefing. (*See* Br. Supp. Pl.'s Mots. 2, ECF No. 24.)

Case law dictates that, once a party files an answer, seeking relief under Rule 12(b)(6) is no longer appropriate. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (noting that a defendant that filed its answer simultaneous to a motion to dismiss "technically should have filed the motion under Rule 12(c)"). However, courts apply the same standard of review to Rule 12(b)(6) and Rule 12(c) motions. *See, e.g.*, *Edwards*, 178 F.3d at 243–44. Because Great

failure and refusal to pay the Claim pursuant to the Policy. Given case law in this court allowing such a breach of contract claim to proceed, and in the absence of any law blocking such a claim under a motion to dismiss, no certainty exists that GRM and SN cannot prove any set of facts that would entitle them to relief at this procedural juncture. *See Shooting Point, L.L.C.*, 238 F. Supp. 2d at 735. The second claim in Count I for anticipatory breach of contract fails to survive Rule 12(c) scrutiny because GRM and SN do not allege the required positive, unconditional, and unequivocal declaration to refuse to provide coverage. *See Yorktowne Shopping Ctr., LLC v. Nat'l Sur. Corp.*, No. 1:10-cv-1333, 2011 WL 2414389, at *7 (E.D. Va. June 15, 2011) (quoting *City of Fairfax v. Washington Metro. Area Transit Auth.*, 582 F.2d 1321, 1326 (4th Cir. 1978)). Finally, at this early procedural juncture, the Court will not dismiss GRM and SN's good faith and fair duty claim.

### a. **Breach of Contract**

The Court will deny the Rule 12(c) motion and Rule 12(b)(6) motion (to the extent it applies) regarding the first claim in Count I for breach of contract.[13] The viability of a claim for

---

American answered the Counterclaim, this Court will analyze Great American's challenge regarding Count I pursuant to Rule 12(c). Given that the same standard of review applies, this becomes a distinction without a difference.

[13] Great American contends judgment in its favor is proper because the Counterclaim never alleges, and GRM and SN cannot prove, that Great American breached the Policy. (Br. Supp. Pl.'s Mots. 9.) According to Great American, the Counterclaim's failure to allege that Great American "declined insurance coverage for the claim," "advised GRM [and SN] that Great American [declined] coverage," or "reported [Great American] was closing its investigation of the Claim or its file on the Claim" is fatal. (*Id.*) The Counterclaim, however, alleges that "[t]he Insureds made a Claim upon Great American for payment which claims were refused and denied." (Countercl. ¶ 24.) Reading inferences favorably to GRM and SN, as this Court must when evaluating GRM and SN's Counterclaim at this stage, the Counterclaim sufficiently alleges an effective or constructive denial of coverage. (*See id.* ¶ 43 ("Despite having an obligation to make payments Great American has failed and refused to make payments to [GRM and SN]."))
Under Virginia law, a breach of contract claim contains three elements: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that

breach of an insurance contract when no express and formal denial of coverage exists will be determined, ultimately, at a later procedural juncture. However, no party has presented, and this Court cannot find, any case dismissing a comparable case under Rule 12(c) or 12(b)(6).[14] Moreover, the *Seneca Insurance Company* court in this jurisdiction has held that such a claim survives this initial challenge. This Court sees no principled difference between this case and *Seneca Insurance Company,* decided just months ago. *See Seneca Ins. Co.,* 2014 WL 2567158, at *3–4.

*Seneca Insurance Company* and this case are functionally indistinguishable for two reasons. First, *Seneca Insurance Company's* facts and procedural posture parallel the facts and procedural circumstances facing this Court. Nothing before this Court suggests that a different result from that reached in *Seneca Insurance Company* should ensue.[15] In both cases, the insurer filed a complaint for declaratory judgment against its insured before making any express or

---

obligation; and[,] (3) injury or damage to the plaintiff caused by the breach of [the] obligation." *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004).

[14] The *Seneca Insurance Company* court noted the lack of case law governing the viability of a breach of contract claim in the absence of an express or formal denial of coverage:

> Shipping Boxes I has not cited, and the Court has not been able to find, a breach of contract claim arising under Virginia law without a formal denial of coverage. (Nor has it located a case stating that such a claim is inappropriate.) But the Court simply concludes that a six month delay between Shipping Boxes' filing a claim for coverage and Seneca's choosing to file a declaratory judgment may be an effective or constructive denial of coverage.

*Seneca Ins. Co.,* 2014 WL 2567158, at *4 (citations omitted). Great American conceded the continuing lack of precedent at oral argument. Apart from the *Seneca Insurance Company* decision, GRM and SN did not direct this Court to any decision where a breach of contract claim survived in the absence of a formal denial of coverage.

[15] Minor differences exist between the Counterclaim here and the *Seneca Insurance Company* counterclaim but none necessitates a different outcome with respect to the first and third breach of contract claims.

formal coverage denial. *Compare Seneca Ins. Co.*, 2014 WL 2567158, at \*3, *and* Answer to Countercl. ¶ 24. The policyholders in both cases counterclaimed for breach of the insurance contract based on the failure or refusal to pay. *Compare Seneca Ins. Co.*, 2014 WL 2567158, at \*2, *and* Countercl. ¶ 37. Both insurers moved for dismissal, judgment on the pleadings, and bifurcation of the Section 38.2-209 request for attorneys' fees. *Compare Seneca Ins. Co.*, 2014 WL 2567158, at \*2, *and* Pl.'s Mot. Dismiss, Mot. Judgment on the Pleadings, and Mot. Bifurcate, ECF Nos. 20, 23, 25. In light of these factual and procedural similarities, this Court discerns no need or means to distinguish *Seneca Insurance Company*.

Second, viewing inferences favorably to GRM and SN, the Court finds no reason to reject GRM and SN's breach of contract claim when no controlling precedent dictating dismissal exists. In contrast, the only on-point precedent counsels a denial of these preliminary motions when plainly stating that, "the fact that [the insurer] has yet to formally deny the claims for coverage, but only has failed to pay them, does not necessarily preclude an action for breach of contract." *Seneca Ins. Co.*, 2014 WL 2567158, at \*3.

In the case at bar, GRM and SN notified Great American of the Loss in September 2013. (Compl. ¶ 13; Countercl. ¶ 22.) Approximately seven months later, on April 24, 2014, Great American filed its Complaint for declaratory judgment citing six potential exclusions and having sent five reservation of rights letters, but without denying coverage. As in *Seneca Insurance Company*, "it is clear that [Great American] is required to pay those claims that are covered by the policy at some point after being notified of the loss or damage." *Id.*; Countercl. Ex. A, 2[16] ("In return for payment of the premium, and subject to all terms of this policy, we agree with you to provide the insurance as stated in this policy.") (capitalization corrected). GRM and SN

---

[16] The Policy does not contain consistent pagination. For ease of reference, the Court employs the page numbers used by the CM/ECF docketing system.

notified Great American of the Claim and, to date, the Claim remains unpaid. (Countercl. ¶¶ 24, 30, 43.); *see Seneca Ins. Co.*, 2014 WL 2567158, at *4 (concluding that a six month delay between a claim for coverage, followed by the insurer's declaratory judgment action, "may be an effective or constructive denial of coverage.")

For the reasons stated above, the Court will DENY Great American's Rule 12(c) motion, and its Rule 12(b)(6) motion (to the extent it applies), as to the first claim in Count I of the Counterclaim for breach of contract. *See Seneca Ins. Co.*, 2014 WL 2567158, at *3–4.

### b.   Anticipatory Breach of Contract

The Court will grant Great American's Rule 12(c) motion and its Rule 12(b)(6) motion (to the extent it applies) regarding the second claim in Count I for anticipatory breach of contract.[17] "To constitute an anticipatory breach, 'it must appear that the party bound under a contract has unequivocally refused to perform, or, as the Supreme Court put it . . . there must be a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time.'" *Yorktowne Shopping Ctr., LLC*, 2011 WL 2414389, at *7 (quoting *City of Fairfax*, 582 F.2d at 1326). GRM and SN do not allege Great American made such a positive, unconditional, and unequivocal declaration to refuse to provide coverage under the Policy. Absent such a declaration, the second claim in Count I of the Counterclaim for anticipatory breach of contract founders. *See id.* at *8 (contracting party's representations that it would not proceed with its obligation unless certain conditions were met "do not constitute anticipatory breach").

---

[17] The *Seneca Insurance Company* decision provides no guidance to this Court as to this aspect of Great American's motions to dismiss. The *Seneca Insurance Company* court denied the Rule 12(b)(6) and 12(c) motions regarding the anticipatory breach of contract claim because Seneca Insurance Company failed to address that claim in its motion. *Seneca Ins. Co.*, 2014 WL 2567158, at *4.

### c.    <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

The Court will deny Great American's Rule 12(c) and its Rule 12(b)(6) motion (to the extent it applies) as to the third part of Count I of the Counterclaim, the good faith and fair dealing claim.[18] Case law from the United States Court of Appeals for the Fourth Circuit and courts in the Eastern District of Virginia guide this Court to recognize, at least at this procedural posture, the existence of this duty under Virginia law. Further, viewing the allegations as it must, the Court will not find that GRM and SN fail to allege sufficient plausible facts to state a claim for the breach of that duty.

The United States Court of Appeals for the Fourth Circuit and this district court recognize an implied duty of good faith and fair dealing governing first-party insurance relationships in Virginia, the exact insurance relationship at issue in this case. *See SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C.*, 806 F. Supp. 2d 872, 892 (E.D. Va. 2011) (citing *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986) (noting "[T]he Fourth Circuit has likewise held that an implied duty of good faith and fair dealing governs first-party insurance relationships in Virginia."), *vacated on other grounds*, 508 F. App'x 243 (4th

---

[18] "[I]n order to state a claim for breach of the implied covenant of good faith and fair dealing under Virginia law, Plaintiff must allege facts, that if true, are sufficient to establish two elements: '(1) a contractual relationship between the parties, and (2) a breach of the implied covenant.'" *Parris v. PNC Mortg.*, No. 2:14CV142, 2014 WL 3735531, at *6 (E.D. Va. July 28, 2014) (quoting *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)).

"The Uniform Commercial Code defines 'good faith' as 'honesty in fact in the conduct or transaction concerned.'" *Id.* (quoting Va. Code Ann. § 8.1A–201(b)(20) (West 2014)). Although "[t]he duty of good faith defies a fast and true definition," "[a]t a minimum, however, it includes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party [to a contract]." *SunTrust Mortg., Inc. v. Mortgs. Unlimited, Inc.*, No. 3:11–cv–861, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012) (third alteration in original) (citations omitted) (internal quotation marks omitted). "[The] duty of good faith and fair dealing prohibits a party from acting arbitrarily, unreasonably, and in bad faith . . . . [or] in such a manner as to prevent the other party from performing its obligations under the contract." *Id.*

Cir. 2013)); *see also Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 345 (4th Cir. 2013)

("'In Virginia, every contract contains an implied covenant of good faith and fair dealing.'"

(quoting *Enomoto*, 624 F. Supp. 2d at 450)). Specifically, our district has identified that "the

Fourth Circuit held that, 'in a first-party Virginia insurance relationship, liability for bad faith

conduct is a matter of contract,' with the contract itself and general contract law 'govern[ing] the

measure of recovery.'" *United Guar. Residential Ins. Co. of N.C.*, 806 F. Supp. 2d at 893

(alteration in original) (quoting *A & E Supply Co.*, 798 F.2d at 676–77).

Although "Virginia law on the implied duty of good faith and fair dealing is not

exceptionally clear," the Fourth Circuit and this district court clearly recognize such a duty.

*Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 465 n.6 (E.D. Va. 2013). This

Court cannot find a Virginia case repudiating such a duty, despite Great American's misplaced

reliance on the Supreme Court of Virginia's decision in *Ward's Equipment, Inc. v. New Holland*

*North America., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). (*See* Pl.'s Reply Mot. Dismiss Countercl.

7, ECF No. 28; Pl.'s Supp'l Br. 1–2, ECF No. 45.) The rule espoused in *Ward's Equipment* as to

"valid and binding rights" in a contract not being subject to the covenant of good faith and fair

dealing fails to apply here because the parties dispute whether the insurance contract creates a

valid and binding right to a coverage determination within a specified period of time.[19] In

distinguishing *Ward's Equipment*, the *United Guaranty Residential Insurance Company of North*

---

[19] The oft-cited language in *Ward's Equipment* is as follows: "[I]n Virginia, when parties
to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is
inapplicable to those rights. This is so under either the common law or the Uniform Commercial
Code . . . ." *Ward's Equip., Inc.*, 493 S.E.2d at 520. Neither party directed the Court to any
provision of the insurance contract that expressly imposes a deadline or timeframe to pay claims.

*Carolina* court noted the relationship between the good faith and fair dealing duty and the express terms of a contract:

> [I]t is clear that the [c]ourt was not saying in *Ward's Equipment* that an implied duty of good faith and fair dealing did not exist at all under Virginia law. Rather, the [c]ourt was saying that an implied duty of good faith and fair dealing must yield to the express terms of the contract when the latter might be conceived as inconsistent with the former.

*United Guar. Residential Ins. Co. of N.C.*, 806 F. Supp. 2d at 894–95. *See also Mortgs. Unlimited, Inc.*, 2012 WL 1942056, at *3 (distinguishing *Ward's Equipment*).

GRM and SN sufficiently allege a contractual relationship between the parties and plausible facts that, at least at this preliminary stage, suggest that Great American breached its duty of good faith and fair dealing.[20]  As the *Seneca Insurance Company* court concluded: "even absent such a [formal] denial [of coverage], [the insured] may still raise a claim for breach of the implied covenant of good faith and fair dealing." *Seneca Ins. Co.*, 2014 WL 2567158, at *4. Therefore, the Court will DENY the Rule 12(c) motion for judgment on the pleadings and the Rule 12(b)(6) motion (to the extent it applies) regarding the third claim in Count I of the Counterclaim for breach of the implied covenant of good faith and fair dealing.

### 2.    Count II:  Declaratory Judgment

The Court will grant Great American's Rule 12(b)(6) motion to dismiss Count II of the Counterclaim because declaratory relief serves no useful purpose in these circumstances:  the

---

[20] These include that Great American:  (1) refused to pay the Claim and instead insisted upon the production of documents in an effort to overwhelm GRM and SN, rather than investigate the Claim; (2) "[took] multiple [EUOs] without explaining to [GRM and SN] that [they] [have] a right to obtain counsel to appear at those events;" (3) "[undertook] a course of action which has delayed and frustrated [GRM and SN], and . . . which is intended to cause [GRM and SN] additional damage, in an effort to coerce and pressure [GRM and SN] into a precarious position, and in an effort to delay payment on this Claim;" and, (4) "as a matter of its standard course and conduct, delay[ed] payment of claims in an effort to hold funds on which it earns interest and other monies." (Countercl. ¶¶ 29(g), 32–33.)

same pleading contains a breach of contract claim that addresses the same conduct as the request for declaratory relief.[21] "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). The Declaratory Judgment Act expressly states that district courts "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). In light of this "nonobligatory" language, the Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton,* 515 U.S. at 288.

A district court may decline to entertain a declaratory judgment claim when it has "good reason" to do so. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 594 (4th Cir. 2004). In determining whether to exercise declaratory jurisdiction, this Court must consider whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (internal citation and quotation marks omitted). Because the requested declaratory judgment serves neither of these objectives, the Court will dismiss Count II of the Counterclaim.

As noted above, "[w]ith respect to the first factor, courts have repeatedly recognized that [a] declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-

---

[21] As discussed above, the Court will deny GRM and SN's motion to dismiss Great American's Complaint because opposing parties bring the declaratory judgment and breach of contract claims contained in Great American's Complaint and GRM and SN's Counterclaim, respectively. The same pleading does not contain both claims. *See supra* III.A. The counterclaim plaintiff in *Seneca Insurance Company* did not include a count seeking declaratory judgment in its counterclaim.

existing breach of contract claim." *See Metra Indus.*, 2014 WL 652253, at *2 (alteration in original) (internal quotation marks omitted) (citing cases); *Newton v. State Farm Fire & Cas. Co.*, 138 F.R.D. 76, 79-80 (E.D. Va. 1991) (dismissing declaratory judgment claim brought by insured against his insurer because the declaratory judgment would serve no useful purpose in clarifying the contractual issues before the court). The *Seneca Insurance Company* court acknowledged this precedent. *See Seneca Ins. Co.*, 2014 WL 2567158, at *5–6 (citations omitted) (internal quotation marks omitted).

In this case and in the same pleading, identical conduct underlies GRM and SN's claims for declaratory judgment and breach of contract. GRM and SN allege, as part of their claim for breach of contract, that Great American "is in breach of its contract" and "has failed and refused to make payment to [GRM and SN] causing them damage . . . ." (Countercl. ¶¶ 40, 43.) Likewise, in the claim for declaratory relief, GRM and SN allege that "Great American is in breach of contract" and seek a declaration that Great American is in breach of contract. (*Id.* ¶¶ 47–48.) "Because the declaratory judgment claim 'seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action,'" the claim for declaratory relief is duplicative and permitting the claim to proceed will not serve a useful purpose.[22] *Metra Indus.*, 2014 WL 652253, at *2 (citation omitted).

___

[22] GRM and SN contend Count II's claim for declaratory judgment is not duplicative of Count I's breach of contract claims because Count II seeks a declaration regarding entitlement to replacement value not covered in Count I. (Countercl. ¶ 52.) These contentions do not persuade. First, in Count I's prayer for relief, GRM and SN seek judgment in its favor "for the amount of its loss as may be determined . . . ." (*Id.* at 45.) Such an amount could cover the replacement value sought in Count II. Second, the Policy indicates Great American, "*at [its] option*, . . . will either: a. pay the value of the lost or damaged property;" or "b. pay the cost of repairing and replacing the lost or damaged property . . . ." (*Id.* Ex. A, 24–25 (emphasis added)). Finally, a policyholder's right to recover the difference between actual cash value and full replacement cost accrues within six months of "(i) the last date on which the insured received a payment for actual cash value or (ii) date of entry of a final order of a court of competent jurisdiction declaratory of

21

Regarding the second factor, no indication exists that a declaratory judgment is necessary to "afford relief from the uncertainty . . . giving rise to the proceeding," *id.* at 594, or to otherwise "guide parties' conduct in the future." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 696 (E.D. Va. 2010); *see also Merino v. EMC Mortg. Corp.*, No. 1:09–cv–1121, 2010 WL 1039842, at *4 (E.D. Va. Mar. 19, 2010) (noting that "a declaratory judgment is an inherently forward-looking mechanism, intended to guide parties' behavior in the future").

No indication exists that the requested declaration as pled will assist in guiding the parties' future conduct. Further, the underlying allegations are duplicative of those asserted in support of the claims for breach of contract. Count II of the Counterclaim fails to state a proper claim for declaratory relief and will be DISMISSED.

### 2. Count III: Section 38.2-209(A) Attorneys' Fees

The Court will GRANT Great American's Rule 12(b)(6) request to dismiss the Counterclaim's separate cause of action seeking attorneys' fees pursuant to Section 38.2-209(A).[23] Section 38.2-209(A) does not create an independent cause of action. *See Saint John's Afr. Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 786 (E.D. Va. 2012). However, because GRM and SN clearly request Section 38.2-209(A) attorneys' fees in the Counterclaim, the Court will permit GRM and SN to seek attorneys' fees pursuant to Section 38.2-209 as set forth in the prayer for relief and ad damnum clause should the need to address that issue arise later in litigation. *See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008) (noting that the

---

the right of the insured to full replacement cost, *whichever shall last occur*." Va. Code Ann. § 38.2-2119(B) (West 2014) (emphasis added). Thus, GRM and SN do not need a declaration from this Court in order to recover replacement value.

[23] The counterclaim plaintiff in *Seneca Insurance Company* did not include a separate count for the Section 38.2-209 attorneys' fees request.

requisite notice of intent to seek attorneys' fees and costs and an allegation of bad faith should be pled in the prayer for relief and that "[n]either a separate suit nor a separate count is necessary to satisfy th[e] requirements for relief under section 38.2-209").[24]

## C.   **Bifurcation**

Finally, pursuant to Rule 42(b), Great American seeks to bifurcate GRM and SN's Section 38.2-209(A) request for attorneys' fees and the breach of contract claims. (Pl.'s Br. Supp. Mots. 25.) Courts in this district repeatedly grant requests to bifurcate Section 38.2-209 attorneys' fees claims and breach of contract claims. *See Seneca Ins. Co.*, 2014 WL 2567158, at *5 (listing cases). To effectuate a more expeditious and economic course of litigation as to this breach of contract claim in the absence of an express denial of coverage, the Court will GRANT Great American's Motion to Bifurcate. However, the Court will not permit bifurcated discovery or an evidentiary hearing on attorneys' fees to the extent those are included in Great American's motion. The Court will determine the attorneys' fees following the resolution of the substantive claims in this matter. *See Seneca Ins. Co.*, 2014 WL 2567158, at *5; *Saint John's Afr. Methodist Episcopal Church*, 902 F. Supp. 2d at 787.

---

[24] The *Saint John's African Methodist Episcopal Church* court noted the "different views among Virginia courts and federal district courts in the Eastern and Western Districts of Virginia as to whether an insured may even assert a claim for attorneys' fees and costs before a judgment is obtained against the insurer." 902 F. Supp. 2d at 786 n.1 (listing cases). "However, the Court notes that, regardless of how the request for fees and costs is styled, Virginia law undoubtedly gives [the insured] the right to recover [attorneys'] fees and costs should the court determine that [the insurer], acting in bad faith, denied coverage or failed to make a payment under the policy." *Id.* (second alteration in original) (citations omitted) (internal quotation marks omitted).

## IV. Conclusion

For the foregoing reasons, the Court:

1.    DENIES GRM and SN's Motion to Dismiss the Complaint (ECF No. 11);

2.    GRANTS IN PART AND DENIES IN PART Great American's Motion for Judgment on the Pleadings and, to the extent applicable, its Motion to Dismiss (ECF Nos. 20, 25); and,

3.    GRANTS Great American's Motion to Bifurcate (ECF No. 23).

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 11-24-14